STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-23

STATE IN THE INTEREST OF T. L. M.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 2011-TP-00012
HONORABLE PATRICIA E. KOCH, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

AFFIRMED.

**James C. Downs**
**District Attorney**
**701 Murray Street**
**Alexandria, LA   71301**
**(318) 473-6650**
**COUNSEL FOR APPELLANT:**
     State of Louisiana

**Richard E. Lee**
**810 Main Street**
**Pineville, LA 71360**
**(318) 448-1391**
**COUNSEL FOR APPELLANTS:**
     State of Louisiana
     P.G.

**Camille J. Giordano**
**Giordano & Giordano**
**1405 Metro Drive, Building 1**
**Alexandria, LA   71301**
**(318) 445-5567**
**COUNSEL FOR APPELLEE:**
     T. L. M.

**R. M.**
**In Proper Person**
**1126 Highway 125**
**Olla, LA   71465**

**AMY, Judge.**

The State and the minor child's mother jointly sought to terminate the parental rights of the child's father, asserting that the father failed to visit or communicate with the child for a period of two years. The trial court denied the requested termination. The State and the mother appeal. For the following reasons, we affirm.

### Factual and Procedural Background

The minor child at issue in this proceeding, T.L.M.,[1] was born in February 2002 to P.G., the mother, and R.M., the father. The couple's relationship ended after the child's birth. The record indicates that the child has lived his entire life with his mother, with limited contact with his father.

In a joint petition, the State of Louisiana and P.G. instituted the present matter to terminate the parental rights of R.M., asserting that he "failed to maintain any contact with the child by visiting him or communicating with him for a period of two (2) years." At the resulting hearing, the mother presented her own testimony, along with that of her mother and her sister. Each reported minimal contact between the child and R.M. over the years. Each denied receiving telephone inquiries from R.M. regarding the child or regularly seeing him at family events such as birthdays or holidays, particularly in recent years. P.G. denied that T.L.M. spoke about his father or sought time with him. P.G. acknowledged, however, that R.M. paid child support.

When the trial court inquired as to why P.G. sought termination, she responded that she wanted to be able to designate a "legal guardian" for the child in the event of her death rather than have R.M. care for the child. She stated that:

> [I]f something was to ever happen to me I want my mother and my sister to take him because they are his life. If you separate him from his grandmother and his sister [sic] and then also – I mean, it's facts, [R.M.] hasn't had anything to do with him. I mean, he doesn't know his life, he

---

[1] This opinion uses the initials of the parties pursuant to the Uniform Rules—Courts of Appeal, Rules 5-1 and 5-2.

doesn't know anything about him except for he is his son, he plays ball. He doesn't know him as a child and I want the best for my son.

R.M. represented himself at the hearing and asserted that work commitments and the wishes of P.G. prevented more significant contact with the child. He disputed testimony that he had not provided gifts and testified that he regularly purchased birthday and holiday gifts for the child or that he provided money to his brother so that gifts could be purchased. In this regard, testimony indicated that P.G. routinely provided R.M.'s brother and sister-in-law with weekend "visitations" with the child. She testified that, even in the event of termination of parental rights, she would permit this contact to continue. R.M. also confirmed that he provided child support.

Ultimately, the trial court denied the request for termination, making a particular finding that termination of parental rights was not in the best interests of the child.

T.G. and the State appeal, asserting that:

> The Trial Court committed legal and manifest error when it found that [R.M.] testified that "there was no excuse to justify his not being involved in the past" but found that it would not be in [T.L.M.'s] best interest to remove the obligation of child support."

## Discussion

*Burden of Proof*

A "petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." La.Ch.Code art. 1035(A). *See also* La.Ch.Code art. 1015 (providing the grounds for termination). Thereafter, the trial court must also find that termination is in the best interests of the child. *See* La.Ch.Code art. 1039.

On review, an appellate court employs the manifest error standard in considering a trial court's findings as to whether parental rights should be terminated. *State ex rel. H.A.S.*, 10-1529 (La. 11/30/10), 52 So.3d 852.

*Louisiana Children's Code Article 1015(4)(c)*[2]

The ground for termination at issue in this case is provided by La.Ch.Code art. 1015(4)(c), which provides that:

> (4)   Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (c)   As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

In this regard, the trial court did not explicitly determine whether clear and convincing evidence established a lack of significant contact for a period of six consecutive months. Although the trial court acknowledged R.M.'s failure to regularly communicate or visit with the child, it noted that R.M.:

> presented testimony to contradict the testimony of [P.G.].  [R.M.] stated that he has maintained contact with his son when [T.L.M.] has visited with his brother, some of such visits occurring within the last two years. [R.M.] further testified that he has not done the best job in reaching out to [P.G.] about visits with his child, but he has relied upon his brother to secure visits since he and [P.G.] have not had any ongoing contact.
> While testifying [R.M.] further claimed that there have been obstacles in visiting [T.L.M.] that he thinks are directly a result of [P.G.] not wanting him to see [T.L.M.].  He testified that he did not know where the child was currently in school and that [T.L.M.] may have possibly been enrolled at approximately five different schools in the past.  He claimed that his brother brought to his attention that [P.G.] did not want [R.M.] to see [T.L.M.] and that the brother reported that [R.M.] was not allowed to take [T.L.M.] to his home.  [R.M.] explained that he believed that he could only visit [T.L.M.] when [T.L.M.] was visiting at his [u]ncle's home.

Ultimately, the trial court explained that it found "it hard to ignore testimony from both [P.G.] and [R.M.] that perhaps two years did not go by without *any* contact or visitation by [R.M.]"[3]

---

[2]  The record includes several references to Article 1015(4)(b), which pertains to contributions to the child's care and support.  However, these references appear to be in error as the parties and the trial court squarely address Subparagraph (c), which involves visitation and communication with the child.

P.G.'s and the State's argument reflects a belief that the trial court found insufficient evidence to satisfy the requirements of La.Ch.Code art. 1015(4)(c). However, the trial court's above terminology is not in alignment with the specific elements of La.Ch.Code art. 1015(4)(c) insofar as it references "any" contact rather than "significant contact" and as it addresses the period at issue as being "two years" rather the six months required by the statutory ground. Instead, it appears from the reasons for ruling that the trial court more fully considered the extent of the contact in its evaluation of the second requirement for termination of parental rights, i.e., that the action is in the best interests of the child. Accordingly, we turn to consideration of that element.

*Best Interests of the Child*

Louisiana Children's Code Article 1037(B) provides:

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 *and that it is in the best interests of the child*, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.

(Emphasis added.)

As referenced above, the trial court concluded that R.M. had made contact, at least to some extent, with the child and that, perhaps, further contact had been hampered in light of the lack of relationship between the parents. Additionally, the trial court acknowledged P.G.'s concerns regarding the care of the child in the event of her death. However, the trial court remarked that:

> Although the relationship with [P.G.]'s mother and sister may be very important in [T.L.M.'s] life, and certainly would be necessary in the unfortunate event of [P.G.]'s death, these relationships could at no time replace a relationship between [T.L.M.] and a father figure. Fortunately

---

[3] This reference to a two-year period appears to reflect the period cited in the petition instituting this matter rather than the six-month period of La.Ch.Code art. 1015(4)(c).

4

in this case the person asserting a desire to be that father figure for [T.L.M.] is [his] biological father, [R.M.].

The trial court further noted that R.M. was current on his child support obligation and had not requested a reduction in the obligation even when his salary changed. In this light, the trial court observed that a termination of parental rights would end R.M.'s obligation in this regard. The court explained that: "Although [P.G.] testified that she is financially secure, this Court cannot find how removing the obligation of child support could in the long term view be in [T.L.M.]'s best interest."

Additionally, the trial court credited R.M.'s testimony that he desires to be a part of the child's life and further explained that:

> [R.M.] testified that he felt there was no excuse to justify his not being more involved in the past, other than to explain that he felt at times that if he pushed the issue of visitation that [P.G.] would stop allowing the visits to [R.M.'s] brother. [R.M.] explained that [T.L.M.]'s visits with [R.M.'s] brother were currently the avenue through which [R.M.] was able to visit with [T.L.M.] and the visits were the means by which [R.M.] sent gifts to [T.L.M.]. [R.M.'s] testimony also indicated that he is admittedly not a perfect parent, but that he has a sincere desire to parent the still very young and impressionable [T.L.M.] and to be a positive part of [T.L.M.]'s life.

Considering these factors, the trial court concluded that "applying the best interest of the child standard by the testimony this court is keenly aware that having both parents actively participating and financially supporting in positive roles in a child's life is unquestionably in that child's best interest." Thus, the trial court rejected the petition for termination of parental rights.

Our review of the testimony reveals no manifest error in the trial court's determination in this regard. Instead, and as acknowledged by the trial court, maintaining R.M.'s financial obligation to the minor child is of significance given P.G.'s status as the single wage earner. Neither do we upset the trial court's evaluation and assessment of R.M.'s credibility regarding his past contact with his

child and with his commitment to support the child.[4] Nor do we discount the trial court's weighing of this type of evidence against that presented by P.G. and the State which focused on the sole fear that R.M., the child's biological father, would receive custody of T.L.M. in the event of P.G.'s death.

In short, we find that the record supports the trial court's decision. We leave its denial of the petition for termination of parental rights undisturbed.

### DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assessed to the appellants.

**AFFIRMED.**

---

[4] R.M. testified:

> Your Honor, first of all I love my child, I want to get that straight. This seeming to make me out to be the bad parent, I mean, it was never – it has never been said that me having to work, I worked offshore, I did police work for twelve years. With these birthday parties, I might not have been there to some of them but I sent gifts. You know, every time [P.G.] would bring my child to my brother she would say, you know, don't let him go with his dad, you know, because – of what reason I don't know. My brother would tell me, my sister-in-law would tell me these things. I would respect her decision on not – you know, not – I want to see my son. And, you know, as far as the interaction, you know, I've been to his school, that wasn't said. I've been [to] Doughnuts with Dads once or twice. I don't – I don't know where my son attends school at right now because I think he has been in five different schools, for what I don't know. The contacts, it was stated that I never had contact with [P.G.] since he was three years old. When my son was born I was there as much as I could. I had to work, I was – I was in law enforcement at will. We talked, we planned on getting married, that wasn't never said, but everything went downhill so she says and so her witnesses said. That's not the case. Also if she didn't call me by nine o'clock I called her by nine o'clock for about four years and something was wrong if that wasn't the case. I know that seems strange. . . . I mean, it's not – I take care of my child. I have three other kids, I work. I'm current on my child support. It took me a while. I would go from making eighty thousand dollars a year you're going to get behind on your bills. But I never asked for a reduction. Went to court when I was supposed to. Everything was hunky-dory. And for me to sign my child away, I would never do that.

6